RALPH ADAMS, by Next Friend, v. QUINCY, OMA-
    HA & KANSAS CITY RAILROAD COMPANY,
    and WILLIAM G. McADOO, Director General of
    Railroads, Appellants.

Division One, April 9, 1921.

1. **PARTIES: Railroad and Director General: Substitution.** Whether
    or not a railroad company could be sued for damages after the
    promulgation of Order No. 50 of the Director General of Railroads,
    and where suit was brought against the railroad company and
    William G. McAdoo whether Walker D. Hines should have been
    substituted as defendant, are purely academic questions in view
    of the Transportation Act of 1920, which authorized the sub-
    stitution of the agent designated by the President in lieu of both
    the railroad company and the Director General.

2. ————: ————: **Substituted By Body of Petition.** Where the
    answer, although entitled, "Answer of William G. McAdoo, Direc-
    tor General of Railroads," purports in its body to be the answer
    of the Director General of Railroads, without naming him, "now
    in possession of said railroad," and the record shows that the
    attorney for Hines defended the case, it will be held that said
    Hines was substituted for McAdoo.

3. ————: ————: **Order No. 50.** After the promulgation of Order
    No. 50 by the Director General of Railroads on October 28, 1918,
    the railroad company, joined with him as defendant, was no longer
    subject to suit for personal injuries arising during Federal con-
    trol, whether happening after or before the date of said order.

4. ————: ————: **Misjoinder.** Where the railroad company and the
    Director General of Railroads were joined as defendants, the
    erroneous judgment against the railroad company does not affect
    the validity of the judgment against the Director General.

5. **NEGLIGENCE: Pleading: Impossibility.** A charge in the petition
    that defendant's negligent act "caused a piece of metal to break
    off of said rail, said spike and said spike maul," does not charge
    an impossibility.

6. ————: **Expert: Striking Spike.** The matter of qualification of ex-
    perts is largely within the discretion of the trial court, and it does
    not abuse its discretion in permitting a section-man, who has had
    eighteen months' experience as a trackman, to testify that the prop-

er way to drive a spike is for the driver to be on the same side of the rail as the spike. Furthermore, where the witness corroborated the testimony of the two other conceded experts, his testimony at worst was harmless error.

7. **INSTRUCTION: Supported by Evidence: Proximate Cause.** The circumstantial evidence showed a small moon-shaped nick in the rail, and three or four nicks in the iron maul, after the injury; that plaintiff heard a ringing sound, as if the maul had struck the rail, when the fellow-servant struck at the spike; that the spike was against the rail when it was struck; that concurrently with the blow some substance, hard and sharp, cut a gash in plaintiff's eye, so that the fluid therefrom immediately escaped into the plaintiff's hand. *Held,* that there was evidence that a piece of steel broke off of the spike, the rail or the maul, as charged in the petition, and such evidence was sufficient to support an instruction submitting that issue to the jury.

8. ——: ——: **Negligence: Driving Spike.** And evidence that the proper way to drive a spike was for the "nipper" to put an iron bar under the tie and pry the tie up tight against the rail before any attempt to drive the spike was made, and for the driver and spike to be on the same side of the rail, and that he stood on the opposite side and struck the spike with the iron maul before the "nipper" had attempted to pry up the tie, is abundant evidence of the driver's negligence in driving the spike.

9. **NEGLIGENCE: Assumption of Risk.** Under the Federal Employers' Liability Act assumption of risk is a defense, which, to be available, must be pleaded by defendant.

10. ——: ——: **Instruction: Established Method.** Where the instruction simply says that plaintiff did not assume the risk of any dangerous method of work employed by the driver of spikes in using his maul, unless plaintiff knew or could have known thereof by due care prior to his injury, a criticism that there is no evidence that defendants were negligent in establishing the method of doing the work lacks substance.

11. ——: ——: ——: ——: **Extraordinary Vigilance.** An instruction telling the jury that it was not the duty of the plaintiff "to maintain extraordinary vigilance to discover defects and dangers in the method of doing the work," where the work referred to is the work which defendants did through their servant at the time of plaintiff's injury, and not their method of doing such work generally, is not erroneous. Under no circumstances was plaintiff required to exercise more than ordinary care to anticipate said servant's negligent act in doing the work.

12. **ARGUMENT TO JURY**: Discharge. Remarks of counsel in their argument to the jury are not reversible error unless the rulings of the court thereon are excepted to at the time they are made, and unless such exceptions are saved the court does not err in refusing to discharge the jury.

13. **EXCESSIVE VERDICT**: $20,000. Where the injury to a youth eighteen years of age consisted of the loss of one eye, and there is a lurking chance of the impairment of his other eye by reason of the injury sustained, a verdict of $20,000 is too large by $7,500.

Appeal from Grundy Circuit Court.—*Hon. L. B. Woods,* Judge.

REVERSED AND REMANDED.

*Hall & Hall* and *J. G. Trimble* for appellants.

(1)   All the errors assigned affecting the defendant railroad company may be summed into one, the judgment must be reversed as to that defendant because this court will take judicial notice of the proclamations of the President and orders of the Director General as well as the Federal Control Act and the Transportation Act.   These show the defendant railroad company was not operating the road at the time of the injury to plaintiff October 28, 1918, and, therefore, no judgment can be entered against it.   Nor. Pac. Ry. Co. v. State, 250 U. S. 148. Kersten v. Hines, 223 S. W. 592.   Cravens v. Hines, 218 S. W. 912.   The practice seems to be to reverse the judgment as to the defendant railroad company and deal with the judgment against the Director General of Railroads as if he had been the only party to the action from the beginning.   That course would not be proper in this case, as we think the allegations show the Director General is made a party at his own order (not because interested), that "defendants" jointly owned and operated the road and that plaintiff was a joint employee having been made solely to prejudice the jury, defendant Hines is entitled to a reversal of the judgment, regardless of any other errors in the case.   (2)   The court committed error in refusing to

sustain the objection to the introduction of any evidence and in refusing to sustain defendant Hines' motion in arrest. (a) The third paragraph of plaintiff's petition (p. 2) shows that the Director General was made a party defendant "at his own order" and not because plaintiff desired a judgment against him. The further allegations of the petition use the plural "defendants" in charging ownership and operation of the railroad and employment of the plaintiff. The court should have taken judicial notice of the fact the government was not in partnership with the railroad company in the ownership and operation of the road. As a general rule misjoinder of parties defendant is not cause for reversing the judgment as to all defendants, if there be one who is singly liable. In this case the general practice should not be followed. (b) The petition alleges that the negligent acts of James and the defendants "caused a piece of metal to break off of said rail, said spike, and said spike-maul." In this allegation there is a charge of joint negligence on the part of James and the joint defendants and that that negligence caused a piece of metal to break off of three different things— an impossibility. There is no charge of a specific defect, and, therefore, no cause of action is stated against either defendant or both of them jointly. The objection to the introduction of any testimony should have been sustained. Failing in that the court should have sustained motion in arrest of judgment because the petition does not state facts sufficient to constitute a cause of action against Hines jointly or singly. (3) The court erred in permitting plaintiff and the witness Barlow to testify as experts. (4) Instruction No. 1 given on behalf of the plaintiff is erroneous. There is no causal connection shown between the position James was in when he undertook to comply with plaintiff's request and the accident. Instructions should be within the pleadings and also within the evidence. It is error to give an instruction on a theory not made in the petition or on one which there is no evidence to sup-

port.  Hufft v. Railroad, 222 Mo. 286; Degonia v. Railroad, 224 Mo. 564; Moellman v. Lumber Co., 134 Mo. App. 485.  There was no evidence in this case upon which to submit to the jury the question that deceased had not been guilty of contributory negligence; so that the instruction so submitting that question was not only beyond the purview of the proven facts but was confusing and misleading.''  (5)  Instruction No. 2 is erroneous.  (a)  It singles out the railroad company as being the only defendant who might raise the question of assumption of risk.  (b)  It was not authorized under the evidence.  It tells the jury that the plaintiff could not be held to have assumed the risk of defects and dangers in the "method of doing the work" and the method in which James used the spike-maul, when there was no evidence whatever that there was any negligence on the part of the defendant in establishing the method of doing the work.  It also instructed the jury that the plaintiff did not have to use extraordinary vigilance to discover defects and dangers in the method of doing the work, but "had a right to believe that the defendants were doing their duty with reference to the method of doing the work" when he had no knowledge to the contrary.  There was no evidence whatever to indicate that the defendant was guilty of any negligence in regard to the method of doing the work.  (6)  The verdict is so excessive as to permit only one conclusion and that is that it is the result of prejudice and passion.  A *remittitur* will not cure the wrong done.  Neff v. City of Cameron, 213 Mo. 350; Wellman v. St. Ry., 219 Mo. 126; Sexton v. Railroad, 245 Mo. 254; Johnson v. Brick Co., 205 S. W. 615; Brady v. Railway, 206 Mo. 509.

*Platt Hubbell* and *Geo. H. Hubbell* for respondent.

(1)  Judgment should be affirmed against the legally substituted defendant.  Kersten v. Hines, 223 S. W. 586; Section 206 (a) Transportation Act, 1920.  The Missouri statute is liberal on the subject of amendments at any stage of the proceedings.  R. S. 1909, sec. 1851.

At the time this case was tried, there was high authority for joining the railroad company as a party defendant. 88 Cent. L. J. 160; Mo. Pac. R. Co. v. Ault, 216 S. W. 3; Ft. Worth Ry. Co. v. Thompson, 222 S. W. 289. The joinder of an unnecessary party as a defendant is no ground for reversal. Halasy v. Halasy, 256 Mo. 327, 330. There is nothing in this record to take this case out of the general rule already announced in Kersten v. Hines, 223 S. W. 586. There is no allegation that defendants jointly owned anything. "Jointly" does not appear in the petition. (2) Plaintiff wanted and secured a judgment against the Director General of Railroads. There is no allegation of partnership. The phrase "at his own order" is merely for the purpose of showing the capacity in which the Director General is sued—and recognizes orders made by him. Plaintiff's petition does not charge an impossibility. Plaintiff had a right to charge that a piece of metal broke off of three different objects—and proof that a piece of metal broke off of one or two objects, is within the allegations of the petition. And, from such a blow as was struck by James, it was highly possible that a piece of metal might have broken off of three different objects. (3) The cross-examination of Fred Barlow proves sufficient experience to qualify him to give expert testimony, as to the proper method of driving such a spike. No rule of evidence was violated in any of the expert evidence. Meily v. Ry. Co., 215 Mo. 567; Same case, 114 S. W. 1013; Wilder v. Great Cereal Co., 109 N. W. 791, 134 Iowa, 451; Combs v. Construction Co., 205 Mo. 391. (4) Plaintiff had a right to testify to where he expected James to stand while striking the spike. Pringle v. Ry. Co., 21 N. W. 108, 64 Iowa, 613. (5) All the facts hypothesized in plaintiff's first instruction, are proved by the evidence. All the facts hypothesized in plaintiff's first instruction are alleged in the petition. To authorize a recovery by the plaintiff, all the facts alleged need not be proved. 4 A. L. R. 979. (6) Proximate cause of an injury of death may

be proved by circumstantial evidence. Colorado & So. Ry. v. Rowe, 224 S. W. 932; San Pedro, L. A. & S. L. R. Co. v. Brown, 258 Fed. 806. (7) James was negligent in striking with his spike-maul while standing on the north side of the rail, and before the nipper had applied his bar and put his weight onto the bar. Siegemund v. Chicago, M. & St. P. Ry. Co., 229 Fed. 956; Hutson v. Mo. Pac. Ry. Co., 50 Mo. App. 300; Swain v. Railway Co., 174 N. W. 386; Oestreich v. Railway Co., 167 N. W. 1032. "Railroad Company" is a generic and group name applicable to those against whom the plaintiff is prosecuting his case—as shown by the context of this instruction. Plaintiff's second instruction complies with the most technical rulings of the Supreme Court of the United States on the subject of assumption of risk. Pryor v. Williams, 41 Sup. Ct. 36; Texas & P. R. Co. v. Swearingen, 49 L. Ed. 388, 196 U. S. 51; Chicago & E. R. Co. v. Ponn, 191 Fed. 682; Williams v. Bunker Hill, etc., Co., 200 Fed. 211; Fidelity Trust Co. v. Wisconsin I. & W. W., 129 N. W. 615; Dolese Bros. Co. v. Kahl, 203 Fed. 627; C. R. I. & P. Ry. Co. v. De Vore, 143 Pac. 864; 43 Okla, 534; 17 Corp. Jur. 1116; Bower v. V. & N. W. R. Co. 148 N. W. 145, 96 Neb. 419.

SMALL, C.—Appeal from the Circuit Court of Grundy County. Suit for personal injuries. The railroad company and William G. McAdoo, Director General of Railroads, were defendants when the petition was filed November 19, 1918.

The petition alleged that on October 28, 1918, plaintiff was in the employ of defendants as a common laborer with a section-crew engaged in repairing the tracks of defendants at Knox City, Missouri. That he, on that date, lost his left eye, because one James, a fellow-servant working with him, attempted to drive a spike into a tie and "negligently struck at said spike and negligently struck said spike and rail with said maul," and "thereby caused a piece of metal to break off of said rail, said

spike and said spike-maul, and to fly up, strike the left eye of plaintiff, and entirely put out the sight thereof, and said injury to said left eye . . . has also resulted in a serious injury to the plaintiff's right eye and the sight thereof.'' The petition also alleged that said spike was weak and crooked, and not reasonably fit for said work, and said spike-maul was slivered, split, broken and battered, and not reasonably safe for doing said work.

At the January term, 1919, defendant railroad company filed a motion to dismiss, because at the time the injury was alleged to have occurred, to-wit, October 28, 1918, its railroad was and for sometime previously had been in possession of and operated by the United States Government by defendant, McAdoo, as Director General of Railroads, under the Act of Congress approved August 29, 1916; that plaintiff and his co-employees were not servants of defendant railroad company, at the time of his injury, but of said Director General, and that by virtue of an order made and published by said Director General, on October 28, 1918, all suits sought to be prosecuted upon causes of action accruing while he was in possession and control of said railroad, should be prosecuted solely against him as such Director General, and in no other manner, and by no other name; that, inasmuch as said Director General had been made a party to said suit, the cause should be dismissed as to defendant railroad company.

On the hearing of this motion to dismiss, it was shown by evidence of defendant railroad company that said William G. McAdoo had resigned as Director General of Railroads, and Walker D. Hines was appointed his successor on January 10, 1919, and said Hines had issued an order saying that in all actions pending it should be unnecessary to use his name, but it should be sufficient if the name of defendant should be, ''The Director General of Railroads.'' Said motion was overruled January 27, 1919.

On February 14, 1919, an answer entitled, ''Answer of William G. McAdoo, Director General of Railroads,''

was filed in said cause, but the record entry of such filing simply showed the filing of "Separate Answer of the Director General of Railroads."

Furthermore, defendants' attorney testified, on the hearing of said motion, that he represented Walker D. Hines, Director General of Railroads. Said answer, while entitled, as aforesaid, purports to be the answer of the Director General of Railroads, without naming him, "now in possession of said railroad," as well as in possession thereof when plaintiff alleges he was injured.

In the title of the case on the record of the entry of the verdict and judgment, the railroad company and Walker D. Hines, Director General, are named as defendants, and the name of William G. McAdoo is omitted.

On said February 14, 1919, defendant railroad company also filed its answer. Both the answer of the Director General of Railroads and the railroad company set up that at the time complained of by plaintiff the said Director General, and not the railroad company, was in possession of and operating the railroad of the defendant company, and that employees, officers and agents operating said railroad were the servants, and their acts were the acts, of the United States Government and said Director General. Both answers also put the allegations of the petition in issue.

As to the evidence. Plaintiff testified, in substance: That he was eighteen years old at the time of his injury. Had been through the first year in high school. Was six feet tall, and weighed 196 pounds before his left eye was put out; since then, 180. His eye was destroyed while at work as a section-hand on the railroad of the defendants on October 28, 1918. He had worked about a week before that time. He was working to save money to take a business course in school. He never worked for a railroad previously, except for a week in the spring prior to the accident. The wage he received from defendants was $3.75 per day. He and other members of the section crew on the morning of October 28, 1918, had been repairing the main track west of the depot at Knox

City, Missouri, putting spikes in some new ties, and about eleven o'clock were directed by the foreman to go over to the sidetrack north of the depot and spike the new ties which had been put in there. That he went over to said sidetrack with three other section-men, Collier, James and Westfall. That James and Collier started to drive two spikes in a tie, one spike on each side of the north rail, James drivng the one on the north, and Collier the one of the south side of said rail. That James drove. his spike in without difficulty, but Collier's spike bent over and got under the ball of the rail. Collier leaving the spike in this condition to answer a call of nature, plaintiff took his place on the south side of said rail, and undertook to straighten up the spike, and asked James to drive it in, because James was right-handed and the plaintiff was left-handed, and the spike was leaning towards the east and was against the rail, and a right-handed man could drive it in more conveniently than a left-handed man, provided he was on the south side of the rail, where plaintiff expected James would place himself to drive the spike; but that James, without going to the south side of the rail, and without warning plaintiff that he was going to strike it, struck the spike from where he was standing on the north side of the rail. At the moment James struck, plaintiff was just straightening himself up, and something hit him in the left eye, and, at the same time, plaintiff also heard a ringing sound, as if James also hit the rail with the iron maul he used in driving the spike. Plaintiff threw his hand up to his face and his left eye "run out into his hand." Plaintiff suffered considerable pain at the time, and for some time thereafter, and at the time of the trial had pains in his head back of his right eye. He also suffered some inconvenience in seeing and reaching for things on his blind side. Plaintiff further said that about a week after he was hurt he returned from the hospital and examined the rail at the place where the accident occurred, and a small moon-shaped piece had been chipped out of the rail. He also afterwards saw the iron maul James used, and

it had three or four small nicks on the side of the large end of it. His parents had given him the right to keep all the wages he should earn.

Plaintiff's medical testimony showed that the sight of his left eye was destroyed, and it was shrunken and shriveled. It was inflamed for some time after the accident, but had no settled inflammation in it at the time of the trial, although it was somewhat inflamed then, which might, however, have been from catching cold in it. The substance which struck it had never been removed from plaintiff's eye. If it was still in there it might months or years afterwards set up inflammation that might cause the right eye to become inflamed, in which event it might become necessary to enucleate the left eye in order to save the right eye.

W. O. Westfall testified for plaintiff: That he was the "nipper," and it was his business to put an iron bar under the tie and pry the tie up tight against the rail before they attempted to drive the spike, in order to make it solid, so that the spike would drive better. That, on this occasion, James struck the spike before he had the tie pried up tight, and before he was ready for the spike to be struck. That this was the first time he had ever seen them strike a spike before he had the tie pried up against the rail.

Two experts of twenty-five or thirty years' experience as section-men and track-foremen, testified for plaintiff, without objection, that the proper way to drive a spike was for the man to be on the same side of the rail as the spike, because, if he undertook to drive it while standing on the opposite side of the rail, he would be more likely to chip the rail and hurt somebody, than to hit the spike; also, that the spike never should be struck until the "nipper" had the tie up against the rail; that is what the "nipper is there for."

Fred Barlow, of eighteen months' experience as a section-man, over defendant's objection that he was not sufficiently qualified, testified to the same effect as the other two experts.

287 Mo.—35

Collier, whose place plaintiff took in trying to straighten up the spike, corroborated the plaintiff as to what took place before Collier left the scene, but he had not returned prior to the accident and did not see it.

Plaintiff's mother, Rosa Adams, testified that plaintiff was always studious and industrious and a great reader before the accident, but since then he could not read long at a time.

Plaintiff also read in evidence, Section 5968, Revised Statutes 1879, showing plaintiff's expectancy of life was 42 years.

It was admitted by defendants that the track being repaired where the injury happened was used in interstate traffic.

Defendants introduced no evidence, except Order No. 4 and Order No. 50, the latter dated October 28, 1918, of the Director General of Railroads, with the understanding that either party could read any part thereof in evidence.

The court gave a number of instructions for the plaintiff. The court refused instructions asked by the defendants to the effect that the plaintiff could not recover against both defendants, or the defendant railroad company. And the record further recites as follows: "And the defendant, Walker D. Hines, Director General of Railroads, prayed the court to instruct the jury as follows: '3. Under the pleadings and all the evidence in the case, plaintiff is not entitled to recover against the defendant, Walker D. Hines, Director General of Railroads, and your verdict will be for said defendant.' Which said instruction, the court refused to give to the jury, and to the action of the court in refusing to give said instruction, the defendant, Walker D. Hines, Director General of Railroads, saved his exceptions at the time."

During the argument of plaintiff's counsel, defendants' counsel objected to certain portions thereof, which objections the court sustained, and on request of defendants' counsel instructed the jury to disregard, and which

remarks thereupon plaintiff's counsel withdrew. Objections were also made to other statements of plaintiff's counsel in his argument, and each time the objection was sustained by the court, and the jury instructed to disregard the statement, and plaintiff's counsel adminished to stay inside of the record. No exception was saved at the time, but after the argument of plaintiff's counsel had been concluded, defendants' counsel moved the court to discharge the jury on account of the remarks of counsel to which he had objected, because they tended to prejudice the jury, "and it is well known the instructions of the court to disregard has no effect upon a jury under such circumstances." Motion was overruled, to which defendants excepted.

The jury found a verdict for the plaintiff for $20,000, and judgment was rendered that plaintiff recover that sum against the "United States Railroad Administration and of and from all interest and rights of the Quincy, Omaha & Kansas City Railroad Company in and to money, funds or property, real, personal or mixed, which has been received or is yet to be received from the Government of the United States or the Railroad Administration thereof." There was also judgment for said sum against the defendant railroad company.

Each of the defendants, Walker D. Hines, Director General, and defendant railroad company, filed separate motions for new trial and separate motions in arrest, which were overruled. An appeal was taken by both defendants to this court.

I. A question has been raised as to the proper parties defendant herein. The appellants contend that the railroad company could not be sued, because Order No. 50 of the Director General of Railroads, promulgated October 28, 1918, prohibited all suits against railroads, and required them to be brought against said Director General, for all injuries to persons arising while such railroads were under Federal control, whether such injuries occurred prior or subsequent to the date of said Order No. 50. Appellants also contend that this suit was

*Parties.*

brought against William G. McAdoo, Director General of
Railroads, and that Walker D. Hines, Director General,
should have been, but was not, properly substituted as de-
fendant for said William G. McAdoo.

We regard both questions as academic since the pas-
sage by Congress of the Transportation Act of 1920, pro-
viding for the termination of Federal control and for the
settlement of disputes between carriers and their em-
ployees. By Section 206 of said act it is provided: (a)
Actions at law  . . .  based upon  causes of  action
arising out of the possession, use or operation by the Presi-
dent of the railroad or system of transportation of any
carrier (under the provisions of the Federal Control Act
or of the Act of August 29, 1916) of such character, as
prior to the Federal control could have been brought
against such carrier, may after the termination of Federal
control, be brought against an agent designated by the
President for such purpose." Paragraph (d) of said
section provided: ''Actions, suits  . . .  of the charac-
ter above described pending at the termination of Federal
control, shall not abate,  . . .  but may be prosecuted
to final judgment, substituting the agent designated by
the President under subdivision (a)." Paragraph (e)
of said section provided: "Final judgment  . . .  of
the character above described, rendered against the agent
designated by the President under subdivision (a), shall
be promptly paid out of the revolving fund created by
Section 210." Paragraph (g) of said section provided:
"No execution or process, other than on a judgment re-
covered by the United States against the carrier, shall be
levied upon the property of any carrier where the cause of
action, on account of which the judgment was obtained,
grew out of the possession, use, control or operation of
any railroad or system of transportation by the President
under Federal control."

We hold that under said Transportation Act, 1920,
it is proper to substitute, John Barton Payne, the agent
designated by the President under said Section 206, para-
graph (a), as defendant in this case, in lieu and in place

of both the railroad company and the former Director General of Railroads. The said act of 1920 contemplates that such agent shall be so substituted, without reference to whether the suits of the character designated, of which the suit before us is one, were pending against the railroad company, or the former Director General of Railroads, or both.

The plaintiff, respondent in this case, in his brief "here and now respectfully moves the Supreme Court to make a proper order of substitution . . . as has been repeatedly done." such substitution was made ·by this court in Kersten v. Hines, 283 Mo. 623, and is not without precedent elsewhere. In Gundlach v. Railroad, 179 N. W. 985, said John Barton Payne, as such agent, was substituted, as sole defendant, instead of the railroad company and the Federal Director General, after affirming a judgment against both of them by amending the mandate. This substitution was made on motion of the defendants in that case. But, we hold that such substitution can be made on motion of either or any party to a suit of the character designated in said Transportation Act. Consequently, "John Barton Payne, agent designated by the President, under the Transportation Act of 1920," is hereby substituted for the appellants, defendants below, as sole defendant and appellant in this cause.

II.   But, if we are in error in assuming that the question of parties defendant is now immaterial and academic as to both sides of this controversy, then we hold: 1st.   That Walker D. Hines was properly, if not expressly then by implication, by the body of the answer and by actually defending the case below, as the record shows he did, substituted as defendant, for William G. McAdoo, Director General. 2nd.   That after Order No. 50 was promulgated on October 28, 1918, by the Director General of Railroads, the railroad company itself was no longer subject to suit for personal injuries arising during Federal control of its railroad, whether such injury happened after or before the date of said Order No. 50.   This question was so fully, yet con-

*Substitution.*

cisely, considered by the Federal Court of Appeals of this circuit, in Mardis v. Hines, 267 Fed. 171, opinion by HOOK, J., that we content ourselves with referring to the opinion in that case as expressive of our views. Our Springfield Court of Appeals, in Cravens v. Hines, 218 S. W. 912, came to the same conclusion. The acts of Congress, proclamations of the President and orders of the Director General of Railroads are quite fully set out in our opinion in the case of Kersten v. Hines, 283 Mo. 623. But said Order No. 50, especially so far as it relates to injuries occurring prior to its date, has been held void in the following cases: Franke v. Railroad, 173 N. W. (Wis.) 701, three judges dissenting; McGregor v. Railway, 172 N. W. (N. Dak.) 841, one judge dissenting; Parkinson v. Railroad, 178 N. W. (S. Dak.) 293; Mobile Railroad v. Jobe, 84 So. (Miss.) 910; Lavalle v. Railroad, 172 N. W. (Minn.) 918.

We cannot concur in the reasoning of the opinions in these cases; we believe they take too narrow a view of the powers of the President and Director General of Railroads under said acts of Congress.

III. But, even if the judgment below was erroneous as to the defendant railroad company, it does not follow that it was invalid against the Director General of Railroads. The mere misjoinder of the railroad company as defendant does not call for a reversal as to said Director General. [Kersten v. Hines, 283 Mo. 623; Cravens v. Hines, 218 S. W. 912.]

IV. (a) The contention of a learned counsel of appellants that the petition fails to state a cause of action, because it charges that defendants' negligent act

Pleading. "caused a piece of metal to break off of said rail, said spike, and spike maul," which is "an impossibility," is not substantial. We see no reason why such charge is an impossibility.

(b) Likewise, the contention that there is no charge of a specific "defect" in the petition. There is a charge of specific defects in the maul and spike, and negligence

on the part of a fellow-servant in striking the spike and chipping the rail, maul and spike. The petition was abundantly sufficient in this respect and in all respects to state a cause of action.

There was, therefore, no error in overruling defendants' objection to the introduction of testimony under the petition.

V.   (a)   There was no error in permitting the witness Barlow to testify as an expert. He had had eighteen months' experience as a track-man. The matter of the qualification of experts is largely within the discre-

**Expert.**  tion of the trial court. It did not abuse its discretion in this case. Furthermore, Barlow simply corroborated plaintiff's other two experts, each of whom had from twenty-five to thirty years' experience in such work. Therefore, if no error had been committed in permitting Barlow to testify as an expert, it would have been regarded as harmless error.

(b)   No testimony of plaintiff, as an expert, is pointed out in the brief, and we must, therefore, disallow appellants' contention that he was not qualified to testify as an expert.

VI.   (a)   Plaintiff's Instruction No. 1 is objected to, because there is no evidence that a piece of steel broke off of either the spike, the rail, or the maul, as charged in the petition. The evidence does not sustain

**Evidence of Cause.**  this contention. The circumstantial evidence showing the small moon-shaped nick in the rail, and three or four nicks in the iron maul, after the injury, and that plaintiff heard a ringing sound, as if the maul had struck the rail, when James struck at the spike; the fact that the spike was against the rail when James struck at it; that concurrently with the blow struck by James, some substance hard and sharp enough to cut a gash in plaintiff's eye, so that the fluid therein escaped therefrom at once into his open hand—all point to but one cause of this catastrophe and that is, that a piece of the rail or the maul or both flew off when James

struck at the spike, and entered the eye of the plaintiff and destroyed it.

(b) So, there is abundant evidence that James was negligent in striking the spike, in the position it was in, from the position he was in and before the "nipper" had performed his function of prying the tie up firmly against the rail.

Evidence of Negligence.

(c) The said Instruction No. 1 followed the allegations of the petition as to the cause of the injury, and there was abundant evidence to support it. We do not set out said instruction, because it is quite lengthy, and the only specific objections made to it are ruled against appellants in what we have said in the immediately preceding paragraphs (a) and (b).

VII. Instruction No. 2 given for plaintiff is objected to. Said instruction is as follows:

"2. On the issue of 'assumption of risk' the court instructs the jury that the plaintiff Ralph Adams cannot be held to have assumed the risk of defects and dangers, if any, in the method of work and the method in which William James used his spike-maul, unless the jury believe from the evidence, that, prior to his injury mentioned in evidence, the plaintiff had knowledge of such defects and dangers, if any—or that such defects and dangers, if any, were plainly observable by him; and unless the said Ralph Adams did have such knowledge, or, unless such defects and dangers if any, were plainly observable to him as aforesaid then, the jury would not be warranted in finding for the defendant railroad company on the defense of assumption of risk.

Assumption of Risk.

"The court instructs the jury that 'assumption of risk' is an affirmative defense and the burden of proving the same is on the defendant railroad company—all the evidence in the case to be considered.

"In this connection, the court instructs the jury that it was not the duty of Ralph Adams to maintain extraordinary vigilance to discover defects and dangers in

the method of doing the work, and that he had a right to believe that the defendants were doing their duty with reference to the method of doing the work, unless the jury believe from the evidence that he had knowledge to the contrary; and the question whether the plaintiff Ralph Adams knew of the defects and dangers, if any, above mentioned, is a question of fact for the jury to determine from a consideration of all the facts and circumstances in evidence."

(a) The appellants' objection to this instruction is that it singles out the railroad company as the only defendant who could raise the question of assumption of risk. Assumption of risk was a matter of defense to be invoked by defendants. Neither the Director General nor the railroad company asked any instructions invoking it. Futhermore while this suit is based upon the Federal Liability Act and upon an injury received while plaintiff was working as a servant upon an instrumentality used in interstate commerce, and assumption of risk is a defense, it must, in order to be available as a defense, be pleaded by the defendants, which was not done in this case.

(b) Appellants' learned counsel also contend that said instruction is erroneous, because there is no evidence that defendants were negligent in establishing the method of doing the work. This objection lacks in substance, because said instruction is not predicated on negligence in establishing the method of doing such work, but simply says, that plaintiff did not assume the risk of any dangerous method of work by James in using his maul, unless plaintiff knew or could have known thereof by due care prior to his injury.

(c) Nor is said instruction open to the objection that it was wrong in declaring that plaintiff was not in duty bound to maintain extraordinary vigilance to discover defects and dangers in the method of doing the work. The work here referred to is the work which defendants did through their agent and servant, James, at the time of plaintiff's injury, and not to their method

of doing such work generally. The instruction must be read in view of the testimony which shows, not that defendants failed to establish a proper method of doing such work generally, but that said James negligently failed to do the work, when injured plaintiff, in the usual and customary method established by defendants and other railroads generally for doing such work. Besides, under no circumstances was plaintiff bound to use more than ordinary care.

VIII. The motion of defendants' 'earned counsel to discharge the jury at the close of the argument, was properly overruled. "Remarks of counsel" are not reversible error unless the rulings of the court thereon are excepted to at the time they are made, which defendants failed to do. [Kersten v. Hines, 283 Mo. 623.]

*Argument to Jury.*

IX. As to the excessiveness of the verdict. We fully realize the great loss plaintiff has sustained by the destruction of his left eye and the lurking chance of the impairment of his right eye by reason of the injury he sustained. We also have fully considered the youth of plaintiff and his expectancy of life, his disfigurement, and the handicap put upon his prospects in life by his injury. No sum of money could restore his lost eye. But the rulings of this court, in such cases, admonish us that in this case the verdict is excessive under all the facts and circumstances in evidence.

*Verdict.*

If, therefore, the plaintiff will file, within ten days from the date of the filing of this opinion, in the office of the clerk of this court, a remittitur of $7,500, the judgment below will be affirmed for $12,500, with interest at six per cent per annum from the date of its original rendition in the circuit court. As to John Barton Payne, agent.

The result is, that the judgment below is reversed as to defendant railroad company, and is affirmed as to and against "John Barton Payne, agent, designated by the President under the Transportation Act of 1920,"

and substituted as sole defendant and appellant in this case, for the sum of twelve thousand five hundred dollars ($12;500), with interest, as aforesaid, provided plaintiff files a *remittitur*, as above required.   Otherwise, said judgment will be reversed as to said John Barton Payne, agent, as aforesaid, and the cause remanded for another trial.  Let it be so recorded.  *Brown* and *Ragland, CC.,* concur.

PER CURIAM:—The foregoing opinion by SMALL, C., is adopted as the opinion of the court.  All of the judges concur.