John D. HEADRICK, Respondent,

v.

The KANSAS CITY SOUTHERN RAILWAY COMPANY, a Corporation, Appellant.

No. 45761.

Supreme Court of Missouri, Division No. 2.

Oct. 14, 1957.

Richard S. Righter, Robert D. Youle, James F. Walsh, Kansas City, Lynn M. Ewing, Nevada, for appellant.

Donald B. Russell, Jack P. Pritchard and Pritchard & Russell, Nevada, for respondent.

BOHLING, Commissioner.

The Kansas City Southern Railway Company, a corporation (defendant), appeals from a judgment for $12,300 in favor of John D. Headrick (plaintiff) for an injury to his right eye. The case is under the Federal Employers' Liability Act (45 U.S.C.A. § 51 et seq.). Defendant contends plaintiff failed to make a submissible case, and plaintiff's main instruction was erroneous.

Plaintiff was an extra man on one of defendant's section crews. At the time of his injury, July 16, 1953, the section crew was aligning defendant's single main line track. Defendant furnished the men with two aligners, two bars and two shovels for this purpose. Aligners are metal devices having a flat base with two angle irons toward the rear that come up to a sleeve which has a socket for the bar to fit in. Aligners weigh about 15 pounds, are about 16 inches long, 5½ inches wide at the top, and are constructed to permit the socket to flatten out for shoving the aligner between the ballast and the rail. The bar is of iron, about 5 feet long, and weighs about 20 pounds. The shovel is used to dig out or fill in ballast under the rail that the aligner may be properly positioned under the rail for moving the track.

The testimony established that, when the ballast is so close to the rail as to prevent shoving the aligner under the rail, the proper or correct method of positioning the aligner is to shovel out just enough ballast to slide the aligner under the rail to its proper position and then tap the aligner with the bar or insert the bar in the socket and tap to make the position of the aligner firm and to prevent its slipping. The crew is then ready to lift on the bar to move the track. The aligner is not struck before it is in position, and is tapped only to firm it after it has been positioned. The front of the aligner extends beyond the flange of the rail when positioned. Such is the testimony of record favorable to plaintiff.

Joseph Lancaster was foreman and had six men in his crew, three for each aligner. Plaintiff handled one aligner, Harvey Pike the bar, and Buenos Ayres the shovel for plaintiff's aligner. Jim Bond, Clifford Johnston and John Wilson handled the other aligner, bar and shovel.

Defendant's track runs north and south. The men lift on the bar with their backs to the aligner in lining the track. After Ayres shoveled out the ballast under the east rail, plaintiff shoved his aligner from the west side under the east rail and positioned it. Pike tapped the aligner lightly with the bar to make it firm against the rail. Plaintiff, Pike and Ayres took a position between the rails at the bar, which had been placed in the socket of their aligner, ready to line the track and waiting for the other men to position their aligner from the west side of the west rail just across the track and opposite the aligner under the east rail.

Foreman Lancaster, who directed the movement, was about seventy feet away in a position to sight along the track. Johnston testified that the ballast was too close to the west rail to position the aligner; that he did not remember a shovel being used under the west rail; and that he was striking the base of the aligner with the bar trying to drive it into position between the ballast and the rail. Wilson and Bond each testified he did not remove any ballast from under the west rail.

Plaintiff testified he was facing west, standing between the rails; that not enough, if any, ballast had been shoveled from under the west rail; that the front end of the aligner was just started under the west side of the rail; that Johnston was about six feet from him, had the bar in both hands, and drew back with the bar; that he saw several pieces of ballast, four or five, the size of his thumb and smaller, and a little dust on the back end of the flat base of the aligner; that Johnston hit the aligner with about all his power; that he saw a little dust or smoke, but no

spark, and something, he did not see it coming, struck his right eye. Johnston testified that simultaneously with his striking the base of the aligner, plaintiff grabbed his eye; and that foreman Lancaster looked at plaintiff's eye and said "I believe your eye is gone." Plaintiff's eye was severely injured.

It was affirmatively established that there was no other activity in the vicinity at the time of the accident.

Neither the members of the section crew who looked at plaintiff's eye nor the doctors who examined or operated on it knew just what struck plaintiff's eye.

Additional facts will be stated in the course of the opinion.

Defendant, conceding plaintiff was injured, contends a jury case was not made because plaintiff failed to establish negligence and proximate cause. Defendant states plaintiff had the burden of establishing by direct proof or evidence from which negligence could be inferred that his employer was negligent under the F.E.L.A. (citing Barnett v. Terminal R. Ass'n, 8 Cir., 228 F.2d 756, 759 [4, 8]; Schwartz v. Kansas City So. R. Co., Mo., 275 S.W.2d 236 [2]); and, in addition, that defendant's negligence caused or contributed to plaintiff's injury (stressing Simon v. Terminal R. Ass'n, Mo.App., 237 S.W.2d 244, 247 [2]; Donnelly v. Goforth, Mo., 284 S.W.2d 462, 466 [7–10]; Harper v. St. Louis Merchants' Bridge Terminal Co., 187 Mo. 575, 586(I), 86 S.W. 99, 102(1); Coble v. St. Louis-San Francisco R. Co., Mo., 38 S.W. 2d 1031, 1036 [4]).

Plaintiff does not question the applicability of defendant's contentions in proper instances. He contends that the evidence, viewed in a light most favorable to plaintiff, establishes negligence, injury and proximate cause. De Lay v. Ward, 364 Mo. 431, 262 S.W.2d 628, 633 [3, 4]; Howard v. Missouri Pac. R. Co., Mo., 295 S.W.2d 68, 71 [1–4].

Plaintiff's legal theory of defendant's liability was that defendant negligently and carelessly failed to provide a safe and suitable method for the aligning of its track.

Of the cases stressed by defendant on negligence: Nance v. Atchison, T. & S. F. R. Co., 360 Mo. 980, 232 S.W.2d 547, 554, was an action under the Kansas law (loc. cit. 550 [1]), and what was said (loc. cit. 554) respecting the F.E.L.A. appears to be dictum. In either event the court held that plaintiff failed to show that the alleged unsafe condition reasonably could have been anticipated by defendant and that defendant had the required actual or constructive notice of such condition (loc. cit. 553). In the other case, Hartgrove v. Chicago, B. & Q. R. Co., 358 Mo. 971, 218 S.W.2d 557, 560 [1], we held plaintiff made a submissible case on defendant's negligence and proximate cause (loc. cit. 561 [4]). They do not disclose error here.

Issues under the F.E.L.A. are governed by the decisions of the Federal courts. Urie v. Thompson, 337 U.S. 163, 174, 69 S.Ct. 1018, 93 L.Ed. 1282; Dunn v. Terminal R. Ass'n, Mo., 285 S.W.2d 701, 704 [1]. Clearly there was an evidentiary basis to sustain a finding that Johnston was negligent in striking the base of the aligner with the bar with about all his power while several small pieces of ballast were on and near the rear of the aligner, in an effort to drive the aligner between the ballast and the rail while the ballast and rail were too close together to permit the aligner to be properly positioned, instead of shoveling out just enough ballast to shove the aligner into position and then tapping it with the bar to make it firm against the rail. Adams v. Quincy, O. & K. C. R. Co., 287 Mo. 535, 551 (VIb) 229 S.W. 790, 795 (VIIb); Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 90 L.Ed. 916. Testimony favorable to defendant that it was usual and customary to strike the aligner in positioning it was not binding on the jury.

Dr. Morris B. Simpson, of Kansas City, testified plaintiff had a "laceration of the cornea, the protruding iris"; that he performed an iridectomy on plaintiff the following day, removing the portion of the iris that was protruding; that this eye had just one laceration; that he did not enlarge the laceration when he operated, and that he did not find any object in plaintiff's eye.

Dr. Francis M. Stone, Jr., of Fort Scott, Kansas, who specialized in practice on the eye, ear, nose and throat and treated plaintiff's eye, testified that plaintiff had a scar extending clear across the cornea, the clear part of the eye, from "about ten to five o'clock"; that part of the iris had come through the wound and was cut off and pulled in on surgery; that plaintiff had "had a severe injury to his eye which could have been caused by a flying object"; that the object inflicting the injury "had to come from either above or below"; that the blow plaintiff suffered was a glancing blow; that a direct blow hard enough to inflict the injury plaintiff sustained would have damaged the retina, and that plaintiff had no retinal damage.

Simultaneously with Johnston's striking the base of the aligner with the bar with just about his full power, plaintiff gripped his eye; and at that time there was no other activity in the vicinity.

This circumstantial evidence is substantial and sufficient to establish that plaintiff's injury resulted from Johnston's act in striking the base of the aligner, and precludes a holding as a matter of law that Johnston's striking the aligner played no part in plaintiff's injury. It was not incumbent upon plaintiff to exclude every possibility of a cause for which defendant was not liable. Cech v. Mallinckrodt Chem. Co., 323 Mo. 601, 20 S.W.2d 509, 515 [9]; Sparks v. Auslander, 353 Mo. 177, 182 S.W. 2d 167, 172 [8]. Plaintiff's evidence on this issue is stronger than that held sufficient in Webb v. Illinois Cent. R. Co., 352 U.S. 512, 77 S.Ct. 451, 454, 1 L.Ed.2d 503, 506. See Rogers v. Missouri Pac. R. Co., 352 U.S. 500, 77 S.Ct. 443, 448 [6, 9, 10], 1 L.Ed.2d 493, 499 [7, 11, 12]. The facts point to but

one cause of the injury to plaintiff's eye and that is that when Johnston struck the aligner a piece of ballast was caused to fly up and strike plaintiff a glancing blow across his eye. Adams v. Quincy, O. & K. C. R. Co., 287 Mo. 535, 551 (VIa), 229 S.W. 790, 795 [10], a case somewhat similar factually; Zimmerman v. Pryor, Mo.App., 190 S.W. 26, 28 [4]; Brainard v. Missouri Pac. R. Co., 319 Mo. 890, 5 S.W.2d 15, 17 [3]. The instant case is within the foregoing authorities, and defendant's cases recognize the rule here applied.

Defendant attacks plaintiff's main instruction.

Plaintiff charged in his petition that defendant's employees "caused, permitted, and allowed said bar handle  *  *  *  to strike said rail aligner base, resting in chat and gravel on the roadbed, driving or forcing said rail aligner between and against the roadbed and rail, with great force and violence, and thereby failed to exercise ordinary care."

Plaintiff's main instruction, after requiring findings that defendant was an interstate carrier and that plaintiff and Johnston were employees of defendant engaged in interstate commerce in aligning defendant's track (issues of fact not contested by defendant), predicated a verdict for plaintiff upon the following:

"and on said date, July 16, 1953, said Clifford Levaun Johnston was using the bar handle of a rail aligner which he negligently and carelessly caused, permitted and allowed to strike the base of said rail aligner while it was resting in chat and gravel on the roadbed between the rail and the roadbed, with great force and violence in such a manner that an object was caused to be impelled upward striking plaintiff's right eye, and if you find that said Clifford Levaun Johnston thereby failed to exercise ordinary care, and if you further find that as a direct and proximate result of said negligence and

carelessness, if any, and said failure to exercise ordinary care, if any, plaintiff's right eye was injured, then your verdict should be for the plaintiff **and** against the defendant."

Our holding that plaintiff made a submissible case sufficiently answers defendant's contention that the evidence did not support a finding "that an object was caused to be impelled upward striking plaintiff's right eye."

Defendant says the instruction is erroneous in that it "fails to submit to the jury that the method of doing the work was dangerous or unsafe." Plaintiff cites no authority to sustain his position that this was unnecessary.

Defendant was not an insurer of the safety of plaintiff. Its liability rests in negligence. 45 U.S.C.A. § 51; Adams v. Atchison, T. & S. F. R. Co., Mo., 280 S.W. 2d 84, 91 [2]; Ellis v. Union P. R. Co., 329 U.S. 649, 653, 67 S.Ct. 598, 91 L.Ed. 572. Defendant owed plaintiff the duty of ordinary care to furnish a reasonably safe place to work, reasonably safe appliances for performing the work, and ordinary care with respect to the methods employed to perform the work. The place of work and the method of work are frequently closely related. Williams v. Terminal R. Ass'n, 339 Mo. 594, 98 S.W.2d 651, 655 [10]. Negligence does not exist in the absence of the violation of a duty. Evans v. Atchison, T. & S. F. R. Co., 345 Mo. 147, 131 S.W.2d 604, 610 [11].

We held in Reese v. Illinois Terminal R. Co., Mo., 273 S.W.2d 217, 222 [5, 6], that an instruction under the F.E.L.A., involving negligence in permitting ice and snow to accumulate and remain at a place of work, which omitted a finding on the essential element that the place was dangerous or not reasonably safe, was erroneous. See also Wagner v. Missouri-K.-T. R. Co., Mo., 275 S.W.2d 262, 267 [10], 50 A.L.R.2d 1062, a passenger-carrier case involving Kansas law.

In Terrell v. Missouri-Kansas-Texas R. Co., Mo., 303 S.W.2d 641, 647 [7], an F.E.L.A. case, the defendant's instruction No. 5 was considered prejudicially erroneous because, among other reasons, it failed to require a finding of reasonable safety in the method of work actually used.

Young v. New York, C. & St. L. R. Co., Mo., 291 S.W.2d 64, 68 [5], approved defendant's instruction III (loc. cit. 67) which required a finding, among other things, that the method of work "was a reasonably safe method."

Reference to the transcript of the record in Adams v. Quincy, O. & K. C. R. Co., 287 Mo. 535, 551(VI), 229 S.W. 790, 795 [10], a case stressed by plaintiff on other issues, discloses that the plaintiff submitted in detail the facts constituting ordinary and reasonable care for performing the work and the method of its actual performance on the occasion in question, etc. See also Morgan v. Doe Run Lead Co., Mo. App., 273 S.W. 244, 246 [2]; Wilborn v. Desloge Consol. Lead Co., Mo.App., 268 S.W. 655, 658 [12].

.  The instruction first informed the jury that Johnston "negligently and carelessly" caused the bar handle to strike the rail aligner with great force and violence et cetera and then required the jury to find that Johnston "thereby failed to exercise ordinary care." This was in the nature of an abstract statement of law. "Negligence" was defined in another instruction to mean "a failure to use ordinary care." If Johnston's acts were negligently and carelessly done as hypothesized in the instruction, he, of course, failed to exercise ordinary care. The instruction should submit sufficient facts to support a finding of negligence and then direct the jury to determine whether the submitted facts constitute negligence, the jury being free to consider all the evidence bearing on the issue. The instruction was plaintiff's submission of defendant's negligence to the jury. Plaintiff's verdict was a nine-juror verdict. Defendant's answer denied plaintiff's charges of negligence. There was testimony from which the jury could find that there was nothing unusual in striking an aligner to position it, and that Johnston was positioning the aligner in the usual and customary manner, which distinguishes the instant case from Hooper v. Conrad, 364 Mo. 176, 260 S.W.2d 496, 500 [2], and Hausherr v. Kansas City Pub. Serv. Co., Mo.App., 268 S.W.2d 433, 435 [1, 2], where there was no conflict in the evidence as to the essential facts and circumstances involved.

 The giving of the instruction constituted reversible error.

The judgment is reversed and the cause is remanded.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.