JENSEN v. LEHIGH VALLEY R. CO.

(District Court, S. D. New York. February 1, 1919.)

RAILROADS ☞5½, New, vol. 6A Key-No. Series—ACTIONS AGAINST—SUB-
STITUTION OF DIRECTOR GENERAL AS DEFENDANT—"MAY."

The provision of General Order of Director General of Railroads No. 50
of October 28, 1918, that pleadings in pending actions for injuries against
a railroad company "may" be amended by substituting the Director Gen-
eral and dismissing the company as defendant, must be construed as per-
missive only, in view of Federal Control Act (Comp. St. 1918, §§ 3115¾a–
3115¾p), providing that carriers, while under federal control, shall be
subject to all laws and liabilities as common carriers, and that actions
may be brought against them, "and judgments rendered as now provided
by law," and such substitution of parties will not be made on motion of
defendant.

[Ed. Note.—For other definitions, see Words and Phrases, First and Sec-
ond Series, May.]

At Law. Action by Jens Martinius Jensen against the Lehigh Valley
Railroad Company. On motion by the defendant to substitute the
Director General of Railroads in place of the defendant, Lehigh Valley
Railroad Company, as defendant, and to dismiss the action as against
the Lehigh Valley Railroad Company. Denied.

On April 27, 1918, the plaintiff was injured while an employé of the Di-
rector General of Railroads upon the Lehigh Valley Railroad Company. On
July 25, 1918, he brought an action at law against the Lehigh Valley Rail-
road Company for negligence under the federal Employers' Liability Act (Act
April 22, 1908, c. 149, 35 Stat. 65 [Comp. St. §§ 8657–8665]). Issue was joined
and the case set for trial upon the day calendar. At 12 o'clock noon on De-
cember 28, 1917, the President took possession and assumed control of the
Lehigh Valley Railroad Company by virtue of authority vested in him by
act of Congress approved August 29, 1916, and appointed William G. McAdoo
Director General of such railroads. By the proclamation assuming posses-
sion of the railroads the President empowered the Director General to pass
general and special orders which should have paramount authority subject to
existing statutes. On March 21, 1918, Congress passed the "Federal Control
Act" (Act March 21, 1918, c. 25 [Comp. St. 1918, §§ 3115¾a–3115¾p]), of
which section 10 provided that "carriers while under federal control shall be
subject to all laws and liabilities as common carriers, whether arising under
state or federal laws or at common law, in so far as may be inconsist-
ent with the provisions of this act or of any other act applicable to such
federal control or with any order of the President. Actions at law or suits
in equity may be brought by and against such carriers and judgments ren-
dered as now provided by law; and in any action at law or suit in equity
against the carrier, no defense shall be made thereto upon the ground that
the carrier is an instrumentality or agency of the federal government.
* * * No process, mesne or final, shall be levied against any property un-
der such federal control." Section 8 of that act provided: "The President
may execute any of the powers herein and heretofore granted him with re-
lations to federal control through such agencies as he may determine."

The Director General, on October 28, 1918, by General Order No. 50, pro-
vided as follows: "Actions at law, suits in equity and proceedings in admiral-
ty hereafter brought in any court based on * * * claim for death or in-
jury to person or for loss or damage to property arising since December 31,
1917, and growing out of the possession, use, control or operation of any
railroad or system of transportation by the Director General of Railroads
which action, suit or proceeding but for Federal control might have been
brought against the carrier company, shall be brought against William G.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

McAdoo, Director General of Railroads, and not otherwise." The General Order further provided: "The pleadings in all actions at law, suits in equity, or proceedings in admiralty now pending against any carrier company for a cause of action arising since December 31, 1917, based upon the cause of action arising from or out of the operation of any railroad or other carrier may on application be amended by substituting the Director General of Railroads for the carrier company as party defendant and dismissing the company therefrom."

The question involved in the motion is whether, under the paragraph of General Order No. 50 last above recited, an action pending on October 28, 1918, for an injury occurring on April 27, 1918, should, upon the defendant's motion, under section 10 of the Federal Control Act, be changed from an action against the railroad to an action against the Director General.

Alexander & Green, of New York City, for the motion.
Edward J. McCrossin, of New York City, opposed.

LEARNED HAND, District Judge (after stating the facts as above). The change in the language of the third paragraph from that of the first is significant. In the first the order directs that all actions "shall" be thereafter brought against the Director General. In the third that the existing pleadings "may" be changed. "May" does indeed at times mean "shall," but hardly when the two words are in such immediate contrast. At least there is no presumption that way. Moreover, I think that, if the third section be construed as permissive only, it serves a sufficient purpose; it would give plaintiffs the right to substitute the Director General, which they might well wish to do, considering the prohibition of the statute against any process upon judgments against the carriers while the roads were in federal control. It is quite true that the third recital is to the effect that the liability should be of the Director General, and that was certainly the meaning of the first paragraph. I think that that paragraph was enough to satisfy the recital, without carrying the meaning into the apparently permissive language of the third.

If, on the other hand, I were to construe the third paragraph as retroactive, at least a formal difficulty would arise, in that it would annul a liability once attached, and substitute another. Now, it is true that that substituted liability, though without express sanctions, has by implication the pledge of the public faith, when reduced to judgment against the Director General. Such a judgment would be probably as good a remedy as a judgment against the United States in the Court of Claims, which was held sufficient in cases of condemnation in Crozier v. Krupp, 224 U. S. 290, 32 Sup. Ct. 488, 56 L. Ed. 771. It is therefore not necessary to say that an explicitly retroactive order would be invalid, if the Director General had made one. I concede, moreover, that there is no presumption against retroactive interpretation, if the change be only in procedure. Yet even if this be possibly only a change in remedy, it is an important change, and not under our traditional notions in such matters to be lightly assumed. I think there ought to be a more definite indication of such a purpose than the words contain.

It is, of course, true that normally we should expect the liabilities to be those of the Director General, who is in control; but Congress

has prescribed otherwise, and the general situation is not one in which the judgments need inevitably fall upon the carriers. A final settlement must be made, in which such claims may well be taken to the account of the Director General, whoever be the judgment debtor. Congress, which had to prescribe a modus vivendi, subject to changes on which the Director General might from time to time determine, appears to have found it easier to leave matters as they were till such time as he chose to act. It does not follow that he is to be assumed to mean to upset that status retroactively, when the just result can be later reached in the settlement. Indeed, it does not even follow that Congress meant to give him the power to do so if he should mean to. Since justice to the carriers may be accomplished without departing from our accustomed habits in relation to provisions of the kind, it seems to me better to follow them.

The only decisions upon the order which I know are two. Keefe v. Chicago, etc., Ry. Co., decided December 2, 1918, in the state district court of Minnesota, goes further than I need go here. Rutherford v. Union Pac. R. Co., 254 Fed. 880, decided in January, 1919, by Judge Munger in the United States District Court for the District of Nebraska, is contrary. It must be conceded that the judicial opinion upon the validity and meaning of the order has not yet become definitely settled. It appears to me that Congress pretty clearly meant, by the term "carriers," the corporations themselves, and that the right to sue them must remain certainly till it is changed by some valid provision.

The motion is denied.