THE CATAWISSA.

(District Court, D. Massachusetts. June 6, 1919.)

No. 1682.

1. SHIPPING ☞3½, New, vol. 8A Key-No. Series—PROPERTY UNDER FEDERAL CONTROL—SUIT AGAINST VESSEL.

The provision of Federal Control Act March 21, 1918, § 10 (Comp. St. 1918, § 3115¾j), that "no process, mesne or final, shall be levied against any property under such federal control," does not prevent the arrest of a vessel in a suit in rem in admiralty, although owned by a railroad company under federal control.

2. SHIPPING ☞3½, New, vol. 8A Key-No. Series—EFFECT OF FEDERAL CONTROL—SUIT IN ADMIRALTY.

Where a railroad company under federal control, as owner of a vessel, brought suit against another vessel for collision, the claimant, on the filing of a cross-libel, is entitled to the usual order, under admiralty rule 53 (29 Sup. Ct. xiv), staying suit on the original libel until security is furnished by libelant.

3. SHIPPING ☞3½, New, vol. 8A Key-No. Series—FEDERAL CONTROL—SUIT AGAINST VESSEL—SUBSTITUTION OF DIRECTOR GENERAL AS RESPONDENT.

In a suit in rem in admiralty against a vessel owned by a railroad company under federal control, the Director General will not be substituted as respondent, on motion of claimant or on his own motion.

In Admiralty. Suit by Marcus Nielsen & Son, Incorporated, against the steamtug Catawissa. On motions for substitution of respondents. Denied.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Blodgett, Jones, Burnham & Bingham, of Boston, Mass., for libelant.

W. M. Richardson, of Boston, Mass., for Director General.

John R. Lazenby, of Boston, Mass., for respondent.

MORTON, District Judge. The facts, while not admitted, are really not in controversy, and are sufficiently established by the formal proofs which have been submitted. The Ulrik Holm and the Catawissa were in collision in Boston Harbor. Both were damaged. The Reading Company, owner of the Catawissa, filed a libel in rem against the Holm, in answer to which her owners, Marius Nielsen & Son, Incorporated, of Copenhagen, appeared, stipulated, and answered. That suit is still pending. Three months and a half afterwards Nielsen & Son Incorporated, filed a cross-libel against the Catawissa, containing the usual prayer that the proceedings under the original libel by the Reading Company be stayed until security be given to respond in damages to the cross-libel, under admiralty rule 53 (29 Sup. Ct. xiv).

[1] The questions now before the court grow out of the fact that the Catawissa, being under charter to the Philadelphia & Reading Railway Company, had been taken over on December 28, 1917, as part of the property of that railroad system, by the United States, under the federal control proclamation. The various proclamations and orders pertinent to this case are set out in the motions of the railroad company, filed February 15, 1919, and of Walker D. Hines, Director General of Railroads, filed March 3, 1919. The Catawissa does not appear ever to have been used for strictly government work. At the time in question she was engaged in the New England coal trade, like a privately owned vessel. (Affidavit of Murphy.) No process has yet issued against the Catawissa upon the cross-libel.

The Reading Company and Mr. Hines have each filed motions asking that he be substituted as respondent in the cross-libel in place of the tug, and that the Catawissa be dismissed from the cross-libel as a party thereto. The present questions are: (1) Whether process shall issue against the Catawissa on the cross-libel, or whether that libel shall be dismissed as to her; (2) whether security shall be required of the Reading Company to respond in damages to the cross-libel as a condition of permitting it to proceed with its original libel; (3) whether, against the objection of Nielsen & Son, Incorporated, the Director General shall be substituted as respondent in the cross-libel.

I have just decided that section 10 of the Railroad Act (Act March 21, 1918, c. 25, 40 Stat. 456 [Comp. St. 1918, § 3115¾j]) authorizes suits in admiralty against railroads while under federal control. Dampskibs, etc., v. Hustis, Receiver (D. C. Mass.) 257 Fed. 862, filed June 6, 1919. It follows that the usual admiralty procedure applies to such cases, including the right of arrest, unless that is forbidden by the last sentence of the first paragraph of section 10: "But no process mesne or final shall be levied against any property under such federal control." If the arrest of the Catawissa be merely the equivalent of attachment on mesne process in an action at law, it is so forbidden.

The arrest of the respondent in admiralty proceedings is, however, much more than an attachment on mesne process. It is the foundation of the jurisdiction. The seizure of the vessel is not simply for the purpose of securing property out of which a decree, if one be obtained, can be satisfied; it is the assertion of jurisdiction over the res, and is necessary to such jurisdiction. The purpose of the sentence quoted is to protect the property of carriers against seizure as security in legal proceedings or for the satisfaction of judgments or decrees. The arrest of a vessel in admiralty, while it has the result of furnishing security, is primarily for a different and more fundamental purpose. The Brig Ann, 9 Cranch, 291, 3 L. Ed. 734; The Propeller Commerce, 1 Black, 574, 580, 17 L. Ed. 107; Taylor v. Carryl, 20 How. 583, 599, 15 L. Ed. 1028.

The statutory provision just quoted does not, therefore, prevent arrest in admiralty proceedings, and process may issue against the Catawissa. General Orders of the Director General 50 and 50A impiledly authorize suits in admiralty against him. The further provisions limiting the control of the courts over such proceedings seem to me of extremely doubtful validity. He cannot by his order prescribe how far he shall be subject to statutory law.

[2] The next question is whether the Reading Company, as original libelant, shall be required to give security under rule 53 on the cross-libel, as a condition of being permitted to proceed with the original libel. The accident happened in September, 1918, and the original libel was filed in that month. The practice of requiring such security under rule 53 in ordinary cases is so firmly established as to be a recognized part of admiralty procedure. Holding as I do that section 10 opens the door to proceedings in admiralty against carriers and their property during federal control, I think that the usual practice in such cases should be followed, as would be done between private parties, and that, where a carrier itself invokes the aid of the admiralty court by filing an original libel, it should be held to respond on the cross-libel like an ordinary litigant. The order prayed for by the cross-libelant, staying the proceedings under the original libel until security is furnished by the respondent in the cross-libel, is granted.

[3] As to the motions of the Reading Company and of Mr. Hines that the Director General be substituted as respondent to the cross-libel: It is for the plaintiff to say whom he will sue, not the respondent. I agree with the result in the Jensen Case. Jensen v. Lehigh Valley R. Co. (D. C.) 255 Fed. 795.

Motions denied.