This is a suit in damages for personal injury. Plaintiff was an employee of the Central Coal Coke Company and his duties consisted in driving an auto-truck and in loading and unloading coal into and from said truck. The yards of the Central Coal 
Coke Company at St. Joseph, Missouri, are located a short distance north of the Union Station and adjacent to the railroad yards maintained by defendant railroad company.
The defendant Chicago, Burlington Quincy Railroad Company is a corporation duly organized and existing and, at the time of the injury in question, owned, maintained and operated a line of railroad through the city of St. Joseph, with spur tracks, side tracks and switch tracks at various points in said city. One of said tracks ran north and south, east of Sixth Street and parallel thereto, from the yards of said railroad company to the coal yard of one John W. Bruce at Sixth and Olive Streets, the said track passing through the property leased to, and occupied by, the Central Coal Coke Company.
At the time the alleged injury defendant William G. McAdoo was Director General of Railroads of the United States. Defendant Millard F. Hughes was a locomotive engineer in the employ of defendants railroad company and William G. McAdoo, Director General, and was operating the locomotive attached to the train which caused the injury.
The yard of the said Coal Company is 600 feet in length and 115 feet in width, divided into two narrow tracts from north to south, called the east and west yard. The barn and coal sheds form the dividing line, the barn to the north and the coal sheds to the south, extending almost the entire distance from the north to the south lines.
Defendant railroad maintained a switch track on the east side of said barn and coal sheds over which cars are switched to the coal yards of the Bruce Coal Company. The only opening in this long dividing line is *Page 464 
about the center of the yard, and consists of a passageway, eleven feet two inches in width, between the barn and the coal shed. It is necessary to go through this passageway in going from one side of the yard to the other and to cross the switch track. The railroad company also maintains a stub track, situated in the east side of the yard of the Central Coal Coke Company, The coal shed opens to the east and the barn to the west.
All coal for delivery is loaded into the trucks and wagons from the east yard, either from the coal sheds or the stub track whereon loaded cars are set. The entrance for wagons and trucks is at the northeast corner of the yard; thence across to the office at the north end of the west yard where orders are received for delivery. The wagons and trucks then proceed south in the west yard, cross through the passageway to be loaded from the sheds or the cars placed on the stub track. The east track was for the exclusive use of the Central Coal Coke Company (hereinafter called the Coal Company.) The construction of the yard as above described had existed for many years and the manner of operation had been as indicated.
The evidence shows that the west rail of the west track was located about five feet from the east line of the coal shed and about six feet from the barn, so that in switching cars on that track, the sides thereof were within about eighteen inches of the shed, and the cab of the switch engine almost touched the side of the shed. The evidence also shows there was no schedule; trains were irregular and infrequent and it had been the custom for many years for defendant railroad company to have a man at said crossing ahead of trains to warn any employees of the Coal Company who might be about to drive through said opening and upon said crossing.
On October 15, 1918, after having delivered two loads of coal, plaintiff returned to the yard, in accordance with his orders and the custom, drove in at the northeast gate, across to the west yard and office and obtained an order for his next load. He then proceeded *Page 465 
south in the customary manner and turned east to pass through the aforesaid opening between the barn and the coal shed, to obtain the load from a car which was set on the stub, or east track. Plaintiff testified he was running slowly, just barely moving, and that his truck engine was making very little noise; that at a point twenty feet west of the track, he listened carefully for the sound of a train, but heard no bell ringing, or other sound indicative of an approaching train, and saw no railroad employee at the crossing. Thereupon, he drove through the opening and as soon as he got through it, he looked to the right and saw the train approaching a few feet away; he immediately turned his truck to the left in an attempt to avoid the train, but was caught by the box over the journal on the left side of the first car, just at the point of the auto truck where plaintiff was seated, and that he and the truck were mashed through the side of the barn, and plaintiff received a permanent injury therefrom.
The petition alleges that plaintiff was in the exercise of proper care and caution in approaching said crossing and charges defendants were negligent in that they "carelessly and negligently operated a locomotive engine and cars, going in a northerly direction, along and over said track, against, upon and over the auto-truck in which plaintiff was riding, and carelessly and negligently drove said engine and cars along and over said track at said point without causing any bell upon the engine to be sounded, and without giving any signal or warning of any kind or character in approaching said point and while passing along and over said track, and carelessly and negilgently drove said engine and cars along and over said track without having any person on the forward end of said engine and cars as they were being moved northward, and without sending a man ahead of said engine and cars to said passageway or crossing, and without having a man stationed at said crossing for the purpose of warning the employees of said Central Coal *Page 466 
Coke Company who might be about to come through said passageway or across said crossing . . ."
The defendant railroad company in its answer admits that during the month of October, 1918, William G. McAdoo was Director General of Railroads, but denies generally each and every other allegation in the amended petition. And as a special defense alleges that "the line of railroad, tracks and switches described in plaintiff's amended petition was not in the possession of and was not being operated by this defendant during the times therein mentioned, but was in fact in the possession of and being operated by the United States Government through its duly appointed agent and officer, the Director General of Railroads . . ." The answer further pleads that on the 26th day of December 1917, the United States Government took possession of all the property of defendant Chicago, Burlington Quincy Railroad Company and operated the same.
The answer also specially pleads General Order No. 50, of the Director General of Railroads of October 28, 1918, directing that all suits sought to be prosecuted upon causes of action accruing during Government control and possession of railroads shall be prosecuted against the said Director General of Railroads, and in no other manner; that afterwards, to-wit, on the ____ day of January, 1919, the said Director General issued a further order known and designated as Order No. 50-a, providing that all actions at law growing out of injuries to persons arising since December 31, 1917, and growing out of the possession, use and control or operation of any railroad by said Director General, which action, but for Federal control, might have been brought against the carrier company, shall be brought against the Director General of Railroads and not otherwise; and that the pleadings in all such actions then pending might, on application, be amended by substituting the Director General of Railroads for the carrier company as party defendant and dismissing the company therefrom. The answer further pleads contributory negligence. *Page 467 
The separate answer of defendant, Director General of Railroads, admits that he was the duly appointed and acting Director General of Railroads, that he was in possession and control, and operating the lines of the defendant railroad company during the month of October, 1918, as alleged in the petition, and generally denies all other allegations therein contained. There is also a plea of contributory negligence.
The answer of defendant Milliard F. Hughes was a general denial.
Under the pleadings thus made the cause went to trial before the court and to a jury, resulting in a verdict and judgment in favor of plaintiff and against all the defendants, in the sum of $2500. Motions for new trial and in arrest, in behalf of all the defendants, were duly filed and by the court overruled. Defendants appeal.
Assignment of error No. 1 urges that the court erred in refusing to give the instructions offered by the defendant railroad company in the nature of a demurrer to the evidence, at the close of plaintiff's case, and again at the close of all the evidence. The next two assignments of error refer to the refusal of the court to give similar instructions in behalf of the other defendants and, as they involve the same points, they will be considered together.
The basis of defendants' contention in this respect is that plaintiff was guilty of contributory negligence, as a matter of law. In passing upon a demurrer to the evidence, it is the duty of the court to treat the evidence of plaintiff as true. This rule is so firmly established as to render citations in support thereof unnecessary. Applying this rule to plaintiff's testimony in this case, we are unable to say plaintiff was guilty of negligence as a matter of law. His testimony tends to show that, on approaching the passageway between the barn and the coal shed, plaintiff was driving very slowly and that he brought his truck almost to a dead stop; that he listen-for the approach of any train on the track, and that when he had gone to a point within the passageway where he *Page 468 
could look for the approach of a train, he did so and then observed the first car in the oncoming train.
The testimony further tends to show that for a long time it had been the custom of the railroad company to have a flagman at this crossing, or to have a brakeman go forward to that point to see that no one crossed when a train was about to pass. Plaintiff testified that he was aware of this custom. We think he had a right to rely upon such custom and that his actions at the time and immediately preceding were most natural. The fact that he did not alight from his truck, go forward and make observations as to the possible approach of a train may not be charged to him as contributory negligence. The degree of care required of him was that which a reasonably careful and prudent person in his situation would have exercised to avoid the dangers incident to a proper operation of trains and cars upon the tracks. [Lang v. Railway Co., 115 Mo. App. 489; Pinney v. Railway Co.,71 Mo. App. 577; O'Connor v. Railway Co., 94 Mo. 150; Baker v. Railroad,122 Mo. 533; Baker v. Railway Co., 147 Mo. 140; Stevens v. Railway,67 Mo. App. 356; Elliott v. Railroad, 105 Mo. App. 523.] The question of contributory negligence was for the jury and the trial court was justified in refusing to give the peremptory instructions offered by defendants.
The defendant railroad company further urges that its demurrer should have been sustained for the additional reason that, as the railroad company was in possession and under the control of the Director General of Railroads of the United States, and the employees thereof, under the direction of said Director General, it may not be held liable for torts committed by its employees while under such control.
We think the law on this point is well settled. It must be conceded that plaintiff would be entitled to but one satisfaction in the event that he obtained judgment against both the railroad company and the Director General. It has been held that it was incumbent upon the Director General to defend such suits and to pay any *Page 469 
judgment obtained out of his receipts. Section 12 of the Act (March 21, 1918) provides that moneys received by the Director General shall not be covered into the treasury of the United States, but shall remain in the custody of the same officers and the accounting thereof shall be in the same manner as before Federal control. It is reasonable to conclude that the same action will follow in the event of recovery in the case at bar as if the railroad company had not been under government control, and the matter of adjustment is between the government and the railroad company.
In Johnson v. McAdoo, 257 F. 757, it is said:
"I think it was the purpose of Congress in adopting the act to allow litigants to sue the railroad companies, just as they had theretofore been able to do, and in such courts as have jurisdiction under the general law. [See Postal Tel. Cable Co. v. Call, 255 F. 850, ___ C.C.A. ___; Jensen v. Lehigh Valley R.R., 255 F. 795.]"
The decisions are all one way and we need go no further with this point. Our ruling is against the position of defendant railroad company thereon.
Under point 3, defendants charge error in the overruling of the demurrer to the evidence offered by defendants' engineer Hughes, for the reason that the negligence of Hughes, if any, constitutes nonfeasance and not misfeasance, in his failure to ring the bell, which failure caused plaintiff's injury, and that employees are not individually liable to third parties for nonfeasance.
We think this point is well taken. It was charged, and the testimony of plaintiff tends to show that the defendant engineer negligently failed to ring the bell as required by ordinance. The principle is well settled that where an agent is employed to perform certain work and negligently fails in a certain element thereof, he is guilty of nonfeasance and his principal is responsible for injuries to third persons received through such nonfeasance. But in case of positive misfeasance and not mere omission of duty on the part of the agent or employee, he will be directly liable to a third party for injuries *Page 470 
resulting therefrom. [Harriman et al. v. Stowe, 57 Mo. 93.]
In McGinnis v. Railway Co., 200 Mo. 347, 357, the Supreme Court very tersely announces the rule applicable to this question, saying:
"There are two classes of cases falling under this doctrine, one wherein the master is held liable for the nonfeasance or negligent failure of the servant to perform a duty, and the other where the master is held liable for the misfeasance or negligent performance of a duty. In the one case the servant simply negligently fails to do what should have been done, and in the other he negligently does what should have been done and properly done.
"In the first class of cases, the servant is not liable to third parties, but the master under the rule of respondeatsuperior is liable. In the second class both are liable to third parties. The servant because he actually does the wrongful act occasioning the injury. The master, because under the rule ofrespondeat superior, he is liable for the negligent act of the agent done within the scope of his employment, in the course and performance of his master's business. In either case the master has recourse upon the servant as for breach of duty to the master."
Applying this rule to the facts herein, as shown by the evidence, it is clear the court erred in overruling the demurrer to the evidence offered by defendant Hughes.
Defendants complain, under point 4, that the court erred in refusing to give defendants' instruction "G" which charged the jury that there was no duty upon defendants, under the law, to flag this kind of a crossing.
We fail to see in the petition that there was any charge of a duty resting on defendants to maintain a general watchman at this crossing, or that an employee was required to run ahead of the train to protect the crossing. The amended petition alleged that defendants negligently approached this particular crossing with the *Page 471 
train, without giving any warning of any kind of its approach; that there was an ordinance requiring the ringing of the bell, and that it had been the custom of the defendants to have a man at this crossing to warn persons of the approach of trains.
Plaintiff's evidence tended to prove these allegations, and we therefore hold that the court's refusal to give instruction "G" was not error. This testimony went to the question of due care exercised by defendants, and to have given the instruction would have been to exclude from the consideration of the jury the very element in plaintiff's cause upon which he had a right to rely for recovery. Defendants' citations, on examination, are found not to be in point.
Defendants further complain that the trial court erred in overruling a motion to discharge the jury because of the oral evidence of a former switchman, admitted over the objection of defendants, to the effect that defendant railroad company had issued a written bulletin requiring switchmen to flag crossings of this character.
It cannot be conceded that oral testimony is admissible to prove the contents of a written instrument, the instrument itself being the best evidence. The record shows this testimony was elicited during the progress of the inquiry as to the custom of defendants in regard to guarding this crossing. Its admission was not harmful since the court directed the withdrawal of such evidence and instructed the jury to disregard it, thus removing any possible prejudice to defendants' rights.
This situation is covered in Harrison v. Electric Light Co.,195 Mo. 605, 635, where it is said by MARSHALL, J.: "When a trial court becomes satisfied that it has erred in the admission of testimony, all that it can do is to instruct the jury to disregard it, and the presumption is that the jury did disregard it." The court held, in effect, in that case that to hold otherwise would be to establish a rule of practice that when a court made a mistake and admitted incompetent testimony, and afterwards *Page 472 
discovered that it had done so, it could not effectually correct the error by instructions to the jury, but that in order to remove the sting of the error, it would have to discharge the jury and award a new trial before a new venire.
Under point 6, defendants urge that there was error in plaintiff's instruction No. 1, because it requires the jury to find that the railroad company and the director general of railroads were jointly operating the railroad track in question and that defendant Hughes was jointly employed by them.
Our ruling above to the effect that the railroad company and the director general were properly joined covers this objection, and further discussion of this point would be useless. Another objection to this instruction is that it failed to require the jury to find that the failure to ring the bell was the proximate cause of the injury. We think this objection is not tenable. The instruction required the jury to find that defendants negligently operated said train along said track and over the crossing, without causing the bell to be rung; and that by reason of the failure to sound the bell plaintiff drove his truck through the passageway toward said track and was struck. There was no proof that plaintiff drove onto the track, and this was not alleged in the petition.
Complaint also is directed against the ruling of the trial court in permitting plaintiff's mother to testify that plaintiff "suffered awful bad," and "he was a very sick man." This clearly was a conclusion of the witness and was not proper, but in view of the fact that three physicians testified to plaintiff's condition, we hold this testimony of the mother was merely cumulative and defendants' rights were not prejudiced thereby.
Defendants' objection that the court erred in refusing to give their instruction "H" which charged that it was the duty of plaintiff when approaching the track in question, to stop before proceeding, if his view was obstructed, already has been decided adversely to this contention in what we have said herein. *Page 473 
Finally, it is contended that the court erred in refusing to allow defendants to show that plaintiff had compromised and settled his claim against the Central Coal Coke Company for this injury. The trial court properly refused to admit this testimony on the ground that there was no evidence showing that the Coal Company was a joint tortfeasor. Further it may be observed that the Coal Company was not a party defendant and the evidence fails in any way to connect it as a joint tortfeasor. The obvious purpose of proposing the evidence was to suggest that plaintiff already had been compensated for the injury, wholly or in part. The questions obviously were improper and there was no error in refusing to admit the evidence designed to be elicited by them.
For the reasons above stated, the judgment against defendants, the Chicago, Burlington Quincy Railroad Company and the Director General of Railroads, is affirmed, and reversed as to defendant Millard F. Hughes.
All concur.