## Ross, Receiver, v. Lambert.

[No. 11,250. Filed November 23, 1922.]

1. COURTS.—*City Court.*—*Jurisdiction.*—*Damages for Injury to Property.*—*Statutes.*—Under §8842c Burns' Supp. 1921, Acts 1917 p. 185, as to the jurisdiction of city courts in cities of the second, third and fourth classes, the city court of Kokomo had jurisdiction of an action for $425 for damage to an automobile in a railway crossing collision. p. 33.

2. APPEAL.—*Presenting Questions for Review.*—*Jurisdiction of Person.*—Where the question of the jurisdiction of the person was not presented in the court below, it cannot be presented on appeal. p. 35.

3. TRIAL.—*Peremptory Instructions.*—*Instructions on the Issues.* —*Practice.*—A party should not present a peremptory instruction in connection with other instructions on the issues of the case, and ask that all of them be given, the usual way being to require the court to determine whether the case shall go to the jury before taking up the general charge, and if the court decides that the case shall not go to the jury no general charge will be necessary, but, if the court decides otherwise, either party may tender instructions as to all questions to be determined by the jury. p. 35.

4. TRIAL.—*Instructions.*—*Applicability.*—*Uncertainty.*—In an action for damage to an automobile in a railroad crossing collision, where a requested instruction on the element of contributory negligence, when considered as an entirety, was both confusing and inapplicable to the evidence, it was properly refused. p. 36.

5. TRIAL.—*Instructions.*—*Refusal.*—*Subject-Matter Covered by Other Instructions Given.*—It is not error to refuse an instruction where the subject-matter thereof is sufficiently covered by other instructions given. p. 36.

6. EVIDENCE.—*Judicial Notice.*—*Acts of Congress.*—*Proclamations of President.*—*Orders of Director General of Railroads.*— The courts take judicial notice of the acts of Congress, the proclamations of the President, and the general orders of the Director General of Railroads relating to judicial proceedings against carriers under federal control. p. 38.

7. APPEAL.—*Defect in Parties.*—*Waiver.*—*Amendment on Appeal.*—Where an action for damages to an automobile at a crossing, which arose while the railroad was under government control, was brought against the receiver instead of the Director General, such defect in parties will not authorize a reversal of the judgment in favor of plaintiff, where the receiver

litigated the cause in two trial courts on the merits without raising any question as to defect in parties, thereby waiving the irregularity by failure to seasonably object, and an amendment as to parties will be permitted in the Appellate Court. p. 38.

From Howard Circuit Court; *William C. Overton,* Judge.

Action by Lula Lambert against Walter L. Ross, receiver of the Toledo, St. Louis and Western Railroad Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Bell, Kirkpatrick & McClure, Van Brunt & Harker* and *Brown, Geddes, Schmettau & Williams,* for appellant.

*Don P. Strode* and *Shirley, Witcomb & Dowden,* for appellee.

STATEMENT BY DAUSMAN, J.—This action was instituted by the appellee in the city court of the city of Kokomo, January 8, 1920, to recover damages in the sum of $425 for injury to her automobile, which injury is alleged to have resulted from the negligence of the appellant. It is averred in the complaint that on May 31, 1919, the Toledo, St. Louis and Western Railroad Company was a corporation and owned and operated a railroad between the cities of Toledo, Ohio, and St. Louis, Mo., passing through the city of Kokomo, the county of Howard, in the State of Indiana; that Walter L. Ross is the duly appointed, qualified and acting receiver of said railroad, having been first appointed by the U. S. District Court in the State of Ohio, and that an ancillary appointment was made later by the U. S. District Court for the Southern District in the State of Illinois; that on the day above stated the plaintiff's agent was driving her car on a public street known as Ohio avenue in the city of Kokomo; that "the tracks of said Toledo, St. Louis and Western Railroad Company" cross said

Ohio avenue, and the place of intersection is known as the Swift Packing House crossing; and that, while the driver of the automobile was attempting to cross the railroad at that crossing, the defendant backed a train of freight cars against the automobile, thereby demolishing it. The complaint also avers in detail the facts constituting the alleged negligence of the defendant by failing to give any warning of the approaching cars and by failing to have a watchman there; facts showing that by reason of the conditions and surroundings the crossing at that time was extra hazardous; and facts showing that the driver of the automobile was free from contributory negligence.

The summons was made returnable January 19, 1920. The defendant filed answer in general denial. Trial by the court, without the intervention of a jury, resulted in a finding and judgment for the plaintiff in the sum of $325.

From the judgment of the city court the defendant appealed to the circuit court of Howard county, where the cause was tried to a jury, on the original pleadings, resulting in a verdict and judgment for the plaintiff in the sum of $425.

At the trial in the circuit court the defendant requested the court to give certain instructions, numbered from one to fourteen, inclusive, all of which were given except the first and fourth. The two which the court rejected are in the following words:

"No. 1. The court instructs you that, under the pleadings and evidence in this case, plaintiff is not entitled to recover and your verdict must be for the defendant.

"No. 4. The court instructs you that where one negligently gets himself into a perilous situation, no amount of care thereafter used by him will excuse him from the results caused by his original negligence. So, if you find

from the evidence in this case that plaintiff's agent Dotterer was in any degree negligent in getting plaintiff's automobile in a perilous situation on defendants' tracks, close in front of an approaching train or cut of cars, or you find that said Dotterer was in any degree negligent in getting plaintiff's car into a perilous situation by driving the same at such speed that it was impossible for him to bring such automobile to a stop after he had arrived at a point where he could see or hear the approaching train or cut of cars, then I instruct you that no effort of care he then used to extricate himself from such a situation or to get across the track or to bring plaintiff's automobile to a stop, would excuse his original negligence and such negligence, if any, would bar plaintiff's right to recover in this case."

The assignment of errors challenges: (1) the action of the circuit court in overruling the motion for a new trial, and (2) the jurisdiction of this court over the subject of the action.

DAUSMAN, J. (after making the foregoing statement, delivered the opinion of the court):

In deference to the logic of the situation, the last assignment should be first considered.

Counsel contend that the city court of the city of Kokomo had no jurisdiction of the subject of the action, for the reason that the defendant there (appellant here) was not a resident of the township in which the city of Kokomo is situated; and that therefore the circuit court of Howard county acquired no jurisdiction by the appeal from the city court; and that this court acquired no jurisdiction by the appeal from the circuit court.

Whether or not the city court of Kokomo had jurisdiction of the subject of the action must be determined by the answer to the question, Was that court authorized

by law to hear and determine cases of the class to which this particular case belongs? *McCoy* v. *Able* (1892), 131 Ind. 417, 30 N. E. 528, 31 N. E. 453; *Coleman* v. *Floyd* (1892), 131 Ind. 330, 31 N. E. 75; *United States, etc., Ins. Co.* v. *Clark* (1908), 41 Ind. App. 345, 83 N. E. 760; *Pease* v. *State* (1921), 74 Ind. App. 572, 129 N. E. 337. The answer to that question must be determined from §1 of the act approved March 6, 1917. Acts 1917 p. 185, §8842c Burns' Supp. 1921. That section consists of about 300 words, put together by a poor workman. By the general act of 1905 (Acts 1905 p. 219, §216) providing for the government of cities, the jurisdiction of city courts seems to have been limited to criminal cases and cases involving violations of city ordinances. The purpose of the act of 1917 (Acts 1917 p. 185, *supra*) is to extend the jurisdiction of city courts, in the classes of cities therein mentioned, to include also civil cases. While the language of §1 of the later act is awkward, we are of the opinion that the legislature thereby intended to confer on the city court of each city of the second, third, or fourth class, original jurisdiction, concurrently with the circuit court, of all civil cases wherein the amount in controversy does not exceed $500 (excepting only certain cases therein enumerated), which jurisdiction shall be coextensive with the township in which the city is situated. The case at bar is a civil case, and the cause of action on which it rests does not come within any of the exceptions enumerated in the section of the statute now under consideration. It follows, then, that the city court of the city of Kokomo had jurisdiction of the subject of the action. Therefore, if counsel for the defendant were of the opinion that their client was not a resident of the township in which the city of Kokomo is situated, they should have raised that question by the proper procedure in the city court.

It should be noted that the contention as to jurisdiction is confusing. The contention as expressly stated is that the city court had no jurisdiction of the subject-matter of the action; but, from the reasons given in support of the contention, it clearly appears that in reality the objection is to that element of complete jurisdiction which, in a technical and narrow sense, is called "jurisdiction of the person of the defendant." The confusion of thought manifested in the presentation of this question of jurisdiction is due, no doubt, to the confusing language of the statute.

Since the question of the jurisdiction of the person of the defendant was not presented in the city court, it cannot be presented here. *Perkins* v. *Hayward* (1892), 132 Ind. 95, 31 N. E. 670; *Daniels* v. *Bruce* (1911), 176 Ind. 151, 95 N. E. 572; *Western Union Tel. Co.* v. *Taylor* (1914), 57 Ind. App. 93, 99, 104 N. E. 771; *Debs* v. *Dalton* (1893), 7 Ind. App. 84, 34 N. E. 236; *Pittsburgh, etc., R. Co.* v. *Home Ins. Co.* (1919), 73 Ind. App. 226, 125 N. E. 427.

Under the first assignment of error, counsel contend that the court erred in refusing to give the two requested instructions.

It will be observed that the first requested instruction is a peremptory direction to the jury to return a verdict for the defendant. The contention that the jury should have been instructed peremptorily to return a verdict for the defendant rests on the ground that the evidence shows conclusively that the driver of the automobile was guilty of contributory negligence. No other reason is adduced. Before considering the contention on its merits, the fact should be emphasized that the giving of that instruction would have been utterly inconsistent with the giving of the other thirteen. Had the court given that one, he could not rationally have given the others. It was unfair to the court

to present that instruction in connection with the other inconsistent instructions, and to ask that all of them be given.   The logical and usual way is to require the court to determine whether the case shall or shall not go to the jury, before taking up the general charge.   If the court decides that the case shall not go to the jury, then no general charge will be necessary.   If the court decides otherwise, then either party will be free to tender instructions as to any or all questions to be determined by the jury.   We have passed over that feature, however, and have considered the requested instruction in the light of the evidence; and when so considered, it becomes apparent that it was not error to reject it. The question of contributory negligence was properly submitted to the jury.

The fourth requested instruction deals exclusively with the element of contributory negligence.   The first sentence thereof purports to be an abstract prop-

4, 5.   osition of law.   See *Snyder* v. *Stanley* (1922), 77 Ind. App. 253, 133 N. E. 512.   The second sentence is an attempt to apply the abstract proposition of law to the evidence; but this requested instruction, when considered as an entirety, is both confusing and inapplicable.   There is no evidence that the speed of the automobile was at all influential in causing the accident. On the contrary, the undisputed evidence shows that the automobile was moving at such a low rate of speed as would have permitted the driver to have stopped it instantly.   But why should any rational man want to stop "after he arrived at a point where he could see or hear an approaching train or cut of cars," if that point was a place of imminent danger?   If the duty rested upon the driver to stop somewhere, that somewhere was at a place of safety.   What is the significance of the term "original negligence?"   Does it imply that there is another kind of negligence which might be called sec-

ondary negligence? How would the jury probably have understood this requested instruction? Had it been given, would not the inevitable effect have been to confuse and perplex the jurors, rather than to have enlightened them? However, the element of contributory negligence was sufficiently covered by the charge given; and the rejection of the fourth requested instruction was not error.

We come now to the serious question in the case. Counsel for the appellant contend that a new trial should have been granted for the reason that "the verdict is not sustained by sufficient evidence." To support the contention they urge that at the time of the accident, the railroad was not in the control of the receiver, but was in the control of the Director General of Railroads as an officer of the federal government; that the persons who were doing the actual work in the operation of the railroad were servants and agents of the Director General; that, as matter of law, liability for the destruction of appellee's property by the negligence of those servants must rest on the Director General—the government which he represented—and not elsewhere; and that, therefore, the judgment should not be permitted to stand, since it does not appear on the face of the record that the Director General was named as a party to the litigation.

When viewed in the light of the argument, it is obvious that by their contention counsel are in reality seeking to present a question of law. Of course, the acts of the Congress, the proclamations of the President, and the general orders of the Director General, were not adduced in evidence; and were not before the jurors as evidence. Had they been so adduced, the jurors could not have been permitted to determine the effect of them. The question was one exclusively for the court. It could have been presented to the court on motion of

either party. It was not, however, presented to the court in any form or manner whatsoever. Notwithstanding the irregular way in which the question arises here, fairness to the litigants, to the trial courts, and to this court, requires that it be not disregarded.

With respect to the question now under consideration, the case at bar is not as simple as counsel for the appellant think. They conceive it to be identical in principle with a supposed case where A sued B to recover damages on the theory that B, who owned and operated an automobile, negligently ran his car against A, thereby inflicting injury on A's person; where B, having been served personally with summons, appeared and defended on the merits; and where the evidence established conclusively that C, a third party, owned and operated the automobile at the time the accident occurred—a clear case of mistaken identity. But, as we shall see, the case at bar involves a different principle.

The courts of this state take judicial notice of the acts of Congress, the proclamations of the President, and the general orders of the Director General, 6, 7. relating to judicial proceedings against carriers under federal control. Section 10 of the Federal Control Act, March 21, 1918 (§3115¾j U. S. Comp. Stat. Ann. Supp. 1919), provides: "Sec. 10. That carriers while under federal control shall be subject to all laws and liabilities as common carriers, whether arising under state or Federal laws or at common law, except in so far as may be inconsistent with the provisions of this act or any other act applicable to such Federal control or with any order of the President. Actions at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law; and in any action at law or suit in equity against the carrier, no defense shall

be made thereto upon the ground that the carrier is an instrumentality or agency of the Federal Government. * * * But no process, mesne or final, shall be levied against any property under such Federal control."

General Order No. 50, issued by the Director General, October 28, 1918, contains the following: "It is therefore ordered, that actions at law, suits in equity, and proceedings in admiralty hereafter brought in any court based on contract binding upon the Director General of Railroads, claim for death or injury to persons, or for loss and damage to property arising since December 31, 1917, and growing out of the possession, use, control, or operation of any railroad or system of transportation by the Director General of Railroads, which action, suit, or proceeding but for federal control might have been brought against the carrier company, shall be brought against the Director General of Railroads, and not otherwise; provided, however, that this order shall not apply to actions, suits, or proceedings for the recovery of fines, penalties, and forfeitures.

"Subject to the provisions of General Orders numbered 18, 18A, and 26 heretofore issued by the Director General of Railroads, service of process in any such action, suit, or proceeding may be made upon operating officials operating for the Director General of Railroads, the railroad or other carrier in respect of which the cause of action arises in the same way as service was heretofore made upon like operating officials for such railroad or other carrier company.

"The pleadings in all such actions at law, suits in equity, or proceedings in admiralty, now pending against any carrier company for a cause of action arising since December 31, 1917, based upon a cause of action arising from or out of the operation of any railroad or other carrier, may on application be amended by sub-

stituting the Director General of Railroads for the carrier company as party defendant and dismissing the company therefrom."

From the language of the statute, courts and lawyers might reasonably have concluded that the governmental plan contemplated that in actions for causes arising out of the operation of any railroad, even after the government had taken control, the particular railway company should be named as defendant, as had theretofore been the practice. On this feature the U. S. Supreme Court said:

"The title by which suit should be brought—the person who should be named as defendant—was not designated in the act. In the absence of explicit direction, it was perhaps natural that those wishing to sue the carrier should have named the company as defendant when they sought to hold the government liable. It doubtless seemed, as suggested in *McNulta* v. *Lochridge* (1891), 141 U. S. 327, 331, 332, 35 L. Ed. 796, 799, 800, 12 Sup. Ct. Rep. 11, that suit should be brought against the transportation company 'by name "in the hands of" or "in the possession of" a receiver;' or Director General. All doubt as to how suit should be brought was cleared away by General Order No. 50, which required that it be against the Director General by name." *Missouri Pacific R. Co.* v. *Ault* (1920), 256 U. S. 554, 41 Sup. Ct. 593, 65 L. Ed. 1087.

Notwithstanding the fact that General Order No. 50 directs that the Director General shall be named defendant, it seems that all actions resting on causes arising out of federal control are regarded as being in truth actions against the carrier in the hands of the Director General. Where such actions result in judgments for the plaintiffs, the judgments are to be paid out of the receipts derived from the operation of the carriers by the Director General, or from such fund as may be pro-

vided by the Congress, and not otherwise. As said by the U. S. Supreme Court in the Ault Case, *supra*:

"The systems are regarded much as ships are regarded in admiralty. They are dealt with as active, responsible parties, answerable for their own wrongs. But since levy or execution upon their property was precluded as inconsistent with the government's needs, the liability of the transportation system was to be enforced by allowing suit to be brought against whoever, as the party operating the same, was legally responsible under existing law, although it be the government.

"Thus, under §10, if the cause of action arose prior to government control, suit might be instituted or continued to judgment against the company as though there had been no taking over by the government, save for the immunity of the physical property from levy, and the power of the President to regulate suits in the public interest, as by fixing the venue, or the time for trial. If the cause of action arose while the government was operating the system, the 'carrier while under Federal control' was, nevertheless, to be liable and suable. This means, as a matter of law, that the government or its agency for operation could be sued, for under the existing law the legal person in control of the carrier was responsible for its acts."

When the government took control, Walter L. Ross was, and for some time had been, receiver of the particular railroad here involved. A receivership implies insolvency, and we know, therefore, that the carrier corporation was not functioning. The railroad, together with all its equipment and facilities, was in the hands and under the control of the receiver, who was operating and managing it primarily for the benefit of creditors. But when the government took control, the receivership was instantly suspended by operation of law.

"By the establishment of the Railroad Administra-

tion and subsequent orders of the Director General, the carrier companies were completely separated from the control and management of their systems. Managing officials were 'required to sever their relations with the particular companies and to become exclusive representatives of the United States Railroad Administration.' * * * The railway employes were under its direction, and were in no way controlled by their former employers. * * * It is obvious, therefore, that no liability arising out of the operation of these systems was imposed by the common law upon the owner-companies, as their interest in and control over the systems were completely suspended." *Missouri Pacific R. Co.* v. *Ault, supra.*

It follows that when the government took control, Walter L. Ross became a representative of the United States Railroad Administration, that thereafter the receipts derived from the operation of the railroad were in his hands, as a managing official, and were the property of the Government, and his bank account was a "Federal Account," and that the service of the summons in the case at bar, made in accordance with our Indiana statute, was service on the Director General. Whatever he did in the case at bar, he must have done as the agent of the Director General. He was an "operating official operating for the Director General of Railroads." He could not serve two masters whose interests are adverse. The presumption is that counsel who made the defense were employed and paid by the Director General. They made no objection to the sufficiency of the service. They did not raise the question as to who should be named defendant, by motion, demurrer, plea, or otherwise. They litigated the cause in two trial courts on the merits. They contested the elements of negligence, contributory negligence, and the extent of the damages. The matters thus litigated con-

cerned the United States Railroad Administration only, for the judgment, if paid at all, must be paid from the Government fund. §12, Federal Control Act (§3115¾l U. S. Comp. Stat. 1918). They prepared and filed a bill of exceptions and a transcript, perfected an appeal, prepared and filed briefs, and participated in the oral argument. Did they do all this for the sole purpose of having liability, if any, rest on the Government rather than on the receiver? We cannot presume that Walter L. Ross would attempt to do these things in his character as receiver when, at the very inception of the litigation, he could have completely relieved himself as receiver by having the Director General substituted as defendant. That was his duty; and the timely discharge of that duty would not have been "trying his adversary's case." Considering all the circumstances, what should be the effect of appellant's conduct?

The case at bar differs radically from the Ault case, *supra.* In the Ault case the plaintiff insisted that liability rested on the carrier notwithstanding the fact that the cause of action arose out of federal control, while in the case at bar the plaintiff contends otherwise. Also, in the Ault case "the application of the Missouri Pacific Railroad Company that it be dismissed from this action" and "to substitute as defendant the Director General of Railroads," was properly and seasonably made, while in the case at bar no such application has been made.

To reverse the judgment and dismiss the action, would amount to a denial of justice, for the statute of limitations would bar another action. §206, Transportation Act 1920 (41 Stat. at L. 461) ; Fed. Stat. Ann. Supplement 1920, p. 77. To reverse the judgment and grant a new trial, for the sole purpose of affording an opportunity to substitute the name of the real defendant, would be unjust, for the cause has been twice duly tried

on the merits. We hold that the irregularity as to the name of the defendant has been waived by the failure seasonably to object to it. *Boland* v. *Claudel* (1914), 181 Ind. 295, 104 N. E. 577; 1 Watson, Revision Works Practice §231. See, also, *Jensen* v. *Lehigh Valley R. Co.* (1919), (D. C.) 255 Fed. 795; *Johnson* v. *McAdoo* (1919), (D. C.) 257 Fed. 757; *Dampskibs* v. *Hustis* (1919), (D. C.) 257 Fed. 862; *The Catawissa* (1919), (D. C.) 257 Fed. 863; *Gowan* v. *McAdoo* (1919), 143 Minn. 227, 173 N. W. 440; *Ringquist* v. *Duluth, etc., R. Co.* (1920), 145 Minn. 147, 176 N. W. 344.

But there is yet another feature which deserves attention.

In the meantime the government has relinquished the possession and control of the carriers to their owners, and the Director General has been discharged. On terminating federal control, the Congress provided by the Transportation Act 1920:

"The President shall, as soon as practicable after the termination of Federal control, adjust, settle, liquidate, and wind up all matters, including compensation, and all questions and disputes of whatsoever nature, arising out of or incident to Federal control." §202, Transportation Act 1920 (41 Stat. at L. 459; Fed. Stat. Ann. Supplement 1920, p. 74).

"Actions, suits, proceedings, and reparation claims, of the character above described pending at the termination of Federal control shall not abate by reason of such termination, but may be prosecuted to final judgment, substituting the agent designated by the President under subdivision (a)." Clause (d), §206, Transportation Act 1920, *supra.*

Said act provides that the President shall designate an Agent for the purposes therein enumerated within thirty days after the passage thereof.

"Final judgments, decrees, and awards in actions, suits, proceedings, or reparation claims, of the character above described, rendered against the Agent designated by the President under subdivision (a), shall be promptly paid out of the revolving fund created by section 210." Clause (e), §206, Transportation Act, *supra.*

In view of the provisions of said statute, we are of the opinion that the ends of justice require that the Agent of the President be substituted as appellant before final action in this cause, and that the substitution should be made in this court. See *Kersten* v. *Hines* (1920), 283 Mo. 623, 223 S. W. 586; *Gundlach* v. *Chicago, etc., R. Co.* (1920), 172 Wis. 438, 179 N. W. 985; *Adams* v. *Quincy, etc., R. Co.* (1921), 287 Mo. 535, 229 S. W. 790; *Payne* v. *White House Lumber Co.* (1921), (Tex. Civ. App.) 231 S. W. 417.

Therefore, it is hereby ordered that James C. Davis as agent of the President, be, and he is, hereby substituted for, and instead of, Walter L. Ross, receiver of the Toledo, St. Louis and Western Railroad Company, who was named as defendant below and as appellant here.

The judgment is affirmed.